UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**                    **JS-6**

| Case No. | CV 12-3934-CAS (VBKx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | INTERNATIONAL ODDITIES V. SCOTT RECORD | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| Not Present | Not Present |

**Proceedings:**     **(In Chambers:) PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** (filed May 24, 2013) [48]

**DEFENDANT'S MOTION FOR LEAVE TO FILE AN AMENDED ANSWER** (filed May 28, 2013) [50]

## I.     INTRODUCTION

On May 4, 2012, plaintiff International Oddities, Inc., filed suit against *pro se* defendant Scott Record.  Plaintiff is a California corporation that sells herbs for smoking under the trademarked name "A'Hia."  Defendant allegedly used plaintiff's "International Oddities" and "A'Hia" trademarks without its permission, in addition to making various false claims concerning the herbal smoking products defendant was then-selling. Plaintiff brings claims for (1) trademark infringement under federal and California law, 15 U.S.C. § 1125(a); (2) cyberpiracy in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d); (3) false advertising under federal and California law, 15 U.S.C. § 1125(a) and Cal. Bus . & Prof. Code §§ 17200, 17500; and (4) unfair competition, Cal. Bus. & Prof. Code § 17200 et seq.

On May 24, 2013, plaintiff filed the instant motion for summary judgment.  Dkt. No. 48.  Defendant filed various papers and objections in opposition to plaintiff's motion, including his June 12 declaration, which sets forth the majority of defendant's factual contentions.  Plaintiff filed a reply on June 17, 2013.

On May 28, 2013, defendant filed a motion for leave to file an amended answer. Dkt. No. 50.  In particular, defendant seeks to amend his answer to include an affirmative defense on the basis of a lack of personal jurisdiction.  Plaintiff opposed this motion on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

### CIVIL MINUTES - GENERAL                           JS-6

| Case No. | CV 12-3934-CAS (VBKx) | Date | July 22, 2013 |
|----------|------------------------|------|---------------|
| Title | INTERNATIONAL ODDITIES V. SCOTT RECORD | | |

June 3, 2013. The Court held a hearing on July 1, 2013, and thereafter received further briefing from the parties on the issue of damages. Dkt. Nos. 79, 80. After considering the parties' arguments, the Court finds and concludes as follows.

## II.   BACKGROUND

Plaintiff is a retailer of products that are commonly known as "legal buds," which are herbs used for smoking sold through various "mainstream" retail channels. Pl.'s Stmt. of Undisputed Fact ("PSUF") 8. Plaintiff has used its company name, International Oddities, as a trade name and trademark for approximately 17 years for its herbal smoking and dietary products. Plaintiff has obtained an incontestable U.S. Trademark Registration, U.S. Registration No. 3,001,848, for International Oddities relating to "non-tobacco smoking products, namely, herbal tobacco substitute, not for medical use." PSUF 10.

Plaintiff is the owner of a trademark registration for "A'Hia," also relating to "herbs for smoking." U.S. Registration No. 4,217,917; PSUF 13. Plaintiff has sold smoking products under the A'Hia name since at least 2001, and has expended nearly $2.75 million on advertising across all its brands, with approximately half of these expenditures in support of the A'Hia-branded products. PSUF 16. As a result of its extensive sales and advertising, plaintiff contends that its trademarks and names have acquired secondary meaning in the herbs for smoking marketplace.

Defendant resides in Twin Falls, Idaho, with a business address located at 266 North Blue Lakes Boulevard. In October 2011, defendant purchased some of plaintiff's "A'hia Bud" directly from plaintiff. In early 2012, defendant registered the domain name ahiabuds.com and ahiabud.com and began selling what defendant called "A'hia," through an online storefront called "Ahia Factory." See PSUF 23–24; Pl.'s Ex. 14-70. This "a'hia" product was advertised therein as "Same plant as International Oddities," but cautioned consumers that "our products are not intended for human consumption." Id. Ex. 14-70. The website also included a purported disclaimer, indicating that "A'hia is a trademark of International Oddities." Id.

In March 2012, plaintiff's investigator purchased one pound of "Ahia" product from the ahiabuds.com website. He also called the phone number listed on the website to confirm that the website was operated by Scott Record. Decl. of Michael Santoni ¶ 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    ○

**CIVIL MINUTES - GENERAL**                                **JS-6**

| Case No. | CV 12-3934-CAS (VBKx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | INTERNATIONAL ODDITIES V. SCOTT RECORD | | |

Later versions of the website at ahiabuds.com changed the description of the products and name of the storefront to "Waltheria Americana," but still advertised the product for sale as "ahia." Pl.'s Ex. 14-87. Defendant also advertised his "A'Hia" bud in print, taking out a full-page advertisement for "AhiaBuds.com" with a disclaimer that "A'Hia is a trademark of International Oddities." Pl.'s Ex. 5-13. This advertisement appeared alongside an advertisement for International Oddities in the same publication. Id.

In addition, plaintiff contends that defendant made false statements in connection with the sale of his "A'Hia" smoking product. Defendant stated on his website that his A'hia came from "the SAME botanical plant as International Oddities," which defendant claims is the *Waltheria americana* plant noted above. PSUF 48. In fact, plaintiff's A'hia product is sourced from a number of plants, which are blended and processed into plaintiff's proprietary blend. It contains no *Waltheria americana*. PSUF 47; Decl. of Robert Hillard ¶¶ 18, 28.

## III.   LEGAL STANDARD

### A.   Leave to Amend

As a preliminary matter, the Court must decide whether Federal Rule of Civil Procedure 15(a) or 16(b) applies. Generally, a court grants a motion for leave to amend pleadings pursuant to the permissive standard of Rule 15(a). Martinez v. Newport Beach City, 125 F.3d 777, 785 (9th Cir. 1997). However, once the district court enters a scheduling order establishing a deadline for amending pleadings, Rule 16(b) applies. Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000). This is because once the scheduling order is in place, the court must modify the scheduling order to permit an amendment. W. Schwarzer, A. Tashima & M. Wagstaffe, Federal Civil Procedure Before Trial (2006) § 8:405.1 (citing Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992)).

Here, the Court has already set a deadline of December 7, 2012, for requesting leave to file amended pleadings or to add parties. Dkt. No. 21. Therefore, defendant must demonstrate "good cause" for amendment under Rule 16, then if "good cause" is shown, defendant must demonstrate that amendment is proper under Rule 15(a).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

### CIVIL MINUTES - GENERAL                    JS-6

| Case No. | CV 12-3934-CAS (VBKx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | INTERNATIONAL ODDITIES V. SCOTT RECORD | | |

### 1.    Federal Rule of Civil Procedure 16

Rule 16(b)(4) provides that a scheduling order shall be modified "only for good cause." "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." Johnson, 975 F.2d at 609.  Accordingly, while the court may consider the "existence or degree of prejudice" to the opposing party, the focus of the court's inquiry is upon the moving party's explanation for failure to timely move for leave to amend.  Id.  "The pretrial schedule may be modified 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'"  Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1087 (9th  Cir. 2002) (quoting Johnson, 975 F.2d at 609).

### 2.    Federal Rule of Civil Procedure 15

Rule 15 provides that after a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a).

Where leave to amend is required, the decision whether to grant leave to amend "is entrusted to the sound discretion of the trial court."  Jordan v. County of Los Angeles, 669 F.2d 1311, 1324 (9th Cir. 1982), vacated on other grounds, 459 U.S. 810 (1982). "Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint."  Johnson v. Buckley, 356 F.3d 1067, 1077 (9th Cir. 2004) (citing Nunes v. Ashcroft, 348 F.3d 815, 818 (9th Cir.2003)).  "Some courts have stressed prejudice to the opposing party as the key factor."  Texaco v. Ponsoldt, 939 F.2d 794, 798 (9th Cir. 1991).  However, "[u]ndue delay is a valid reason for denying leave to amend."  Id. (internal quotation marks and citation omitted); but see Bowles v. Reade, 198 F.3d 752, 758 (9th Cir. 1999) ("Undue delay by itself, however, is insufficient to justify denying a motion to amend.").  Further, "the liberality of Rule 15(a) does not mean that amendment will be allowed regardless of the diligence of the moving party.  Where the party seeking amendment knows or should know of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend may be denied."  Jordan, 669 F.3d at 1324.  "Late amendments to assert new theories are not reviewed favorably when the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**                                      JS-6

| Case No. | CV 12-3934-CAS (VBKx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | INTERNATIONAL ODDITIES V. SCOTT RECORD | | |

facts and the theory have been known to the party seeking amendment since the inception of the cause of action." Kaplan, 49 F.3d at 1370 (internal quotation marks and citation omitted). Delay can contribute to a finding of prejudice, for "expense, delay, and wear and tear on individuals and companies count toward prejudice." Id. (internal quotation marks and citation omitted).

**B.      Motion for Summary Judgment**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**                    JS-6

| Case No. | CV 12-3934-CAS (VBKx) | Date | July 22, 2013 |
|----------|------------------------|------|---------------|
| Title | INTERNATIONAL ODDITIES V. SCOTT RECORD | | |

## III.   ANALYSIS

### A.   Defendant's "Motion for Leave to Amend"

Defendant seeks to file an amended answer addressing two oversights in his operative answer.  First, defendant's proposed amended answer asserts a new affirmative defense—that this Court may not exercise personal jurisdiction over him in California.  Relatedly, defendant has filed a memorandum in support of his motion that explains his grounds for moving to dismiss for lack of personal jurisdiction, or in the alternative, to change venue.  The Court construes this as a motion to dismiss for lack of subject matter jurisdiction or alternatively, to change venue, and addresses this motion below.

### 1.   Motion to Dismiss for Lack of Personal Jurisdiction

Under Federal Rule of Civil Procedure 12(h)(1), a party waives a defense of lack of personal jurisdiction by "failing to either: (i) make it by motion under [Rule 12]; or (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course."  See Benny v. Pipes, 799 F.2d 489, 492 (9th Cir. 1986) (holding that a "general appearance or responsive pleading by a defendant that fails to dispute personal jurisdiction will waive any defect in service or personal jurisdiction"); Am. Ass'n of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1106 (9th Cir. 2000) ("A fundamental tenet of the Federal Rules of Civil Procedure is that certain defenses under [Rule 12] must be raised at the first available opportunity or, if they are not, they are forever waived."); Wright & Miller, 5C Federal Practice and Procedure § 1391 (3d ed.) (noting that these defenses are waived if they are "not included in a preliminary motion under Rule 12 . . . or, if no such motion is made, they are not included in the responsive pleading or an amendment as of right to that pleading under Rule 15(a)").

Here, defendant appeared in this action and filed an answer, whereby he "denie[d] the allegations of subject matter jurisdiction," but said no more on the subject.  Dkt. No. 17.  The Court finds this "denial" of plaintiff's jurisdictional allegation insufficient to preserve defendant's right to object to personal jurisdiction at this late stage.  Rule 8(b) requires a defendant to "state in short and plain terms its defenses" and to "affirmatively state any avoidance or affirmative defense."  Defendant did not do so by denying, without more, plaintiff's jurisdictional allegations.  Indeed, defendant's answer contains a section

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**                    JS-6

| Case No. | CV 12-3934-CAS (VBKx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | INTERNATIONAL ODDITIES V. SCOTT RECORD | | |

entitled "affirmative defenses," but personal jurisdiction is not included therein.  As defendant did not "raise" this defense, he waived it under Rule 12(h).

Waiver or not, the Court finds that it has specific personal jurisdiction over defendant.  In order for a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).[1]  The Court focuses here only on specific personal jurisdiction, or jurisdiction that arises out of defendant's forum-related activities.  See Rano v. Sipa Press, Inc., 987 F.2d 580, 588 (9th Cir.1993).

The test for specific personal jurisdiction has three parts:

(1)    The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum, purposefully availing himself of the privilege of conducting activities in the forum and invoking the benefits and protections of its laws;

(2)    The claim must arise out of or result from the defendant's forum-related activities; and

(3)    Exercise of jurisdiction must be reasonable.

Mavrix Photo, Inc. v. Brand Technologies, Inc., 647 F.3d 1218, 1228–29 (9th Cir. 2011); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475–76 (1985).  The plaintiff bears the burden of satisfying the first two prongs; if plaintiff does so, the burden shifts to defendant to present a "compelling case" that exercising jurisdiction would be unreasonable.  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).

---

[1] California authorizes the exercise of personal jurisdiction over a non-forum defendant to the full extent permitted under the Due Process Clause of the Fourteen Amendment to the U.S. Constitution.  Cal. Civ. Proc. Code § 410.10.  Accordingly, jurisdictional analysis under state law and federal due process are the same.  Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**                           **JS-6**

| Case No. | CV 12-3934-CAS (VBKx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | INTERNATIONAL ODDITIES V. SCOTT RECORD | | |

In a tort case, courts require a showing that the defendant "purposefully directed" its actions to the forum state, applying the "effects test" set forth in Calder v. Jones, 465 U.S. 783 (1984).  See Mavrix, 647 F.3d at 1228.  The effects test requires a plaintiff to demonstrate that the defendant allegedly (1) committed an intentional act, (2) expressly aimed at the forum state, (3) "causing harm that the defendant knows is likely to be suffered in the forum state."  Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir.2010) (quoting Yahoo! Inc. v. La Lingue Contre Le Racisme, 433 F.3d 1199, 1206 (9th Cir. 2006).  Because plaintiff has alleged trademark infringement, unfair competition, and false advertising, which are "tort-like cause[s] of action," the Court applies the purposeful direction framework set forth in Calder.  See Mavrix, 647 F.3d at 1228; Washington Shoe Co. v. A-Z Sporting Goods Inc., 704 F.3d 668, 672 (9th Cir. 2012).

Here, plaintiff alleges that defendant wilfully infringed upon its protected marks by selling products under the A'hia name on his website.  As to intentionality, plaintiff offers substantial evidence that defendant knew the marks were protected—by virtue of defendant's inclusion of a disclaimer on his website—and that defendant knew where plaintiff was located, since defendant purchased authentic A'hia product directly from plaintiff.  Thus, defendant's actions satisfy the first and third prongs of the purposeful direction test, in that defendant's allegedly intentional acts caused harm that defendant knows or should have known was likely to befall plaintiff in the forum state.

Moreover, while "a foreign act with foreseeable effects in the forum state [does not] always gives rise to specific jurisdiction," specific jurisdiction will exist where a defendant "expressly aims" their conduct at the forum state.  Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1087 (9th Cir. 2000).  This further requirement is satisfied "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state."  Washington Shoe Co., 704 F.3d at 675; see CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1077 (9th Cir. 2011) ("the 'expressly aimed' prong of the purposeful direction test can be met where a plaintiff alleges that the defendant individually targeted him by misusing his intellectual property on the defendant's website for the purpose of competing with the plaintiff in the forum") (quotation omitted).

Here, defendant's "alleged willful infringement of [plaintiff's trademark], and [his] knowledge of both the existence of the [trademark] and the forum of the [trademark]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

## CIVIL MINUTES - GENERAL                    JS-6

| Case No. | CV 12-3934-CAS (VBKx) | Date | July 22, 2013 |
|----------|----------------------|------|---------------|
| Title    | INTERNATIONAL ODDITIES V. SCOTT RECORD |  |  |

holder, is sufficient 'individualized targeting' to establish the 'something more' necessary to satisfy the express aiming requirement." Washington Shoe, 704 F.3d at 678–79. Accordingly, the Court concludes that purposeful direction is established here.

Because there can also be no dispute that plaintiff's claims arise out of the forum-related activities described herein, this leaves the question of whether defendant has presented a "compelling case" that the exercise of personal jurisdiction in this case would be unreasonable. The Court concludes that it would not be. Seven factors guide the Court in determining whether an exercise of jurisdiction comports with "fair play and substantial justice"; namely:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1079 (9th Cir. 2011). While defendant cites the relevant legal test, his only argument with respect to these considerations is that he is presently insolvent. The Court notes that the burden on defendant of defending in California is not insubstantial, and that defendant's "injection" into California's affairs is not overwhelming. However, California has a strong interest in protecting the intellectual property rights of its citizens, and plaintiff has a strong interest in vindicating these rights in an expeditious fashion. Given defendant's length delay in raising this defense, the Court concludes that it is not unreasonable to exercise personal jurisdiction over defendant in this case, even if he had not waived this defense.

### 2.    Motion to Transfer Venue

As to plaintiff's motion to transfer, the Court must deny this untimely request. Under 28 U.S.C. § 1404(a), the Court must consider the (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. See Los Angeles Memorial Coliseum Comm'm v. NFL, 89 F.R.D. 497, 499 (C.D. Cal. 1981). In deciding whether the "interests of justice" support a transfer, a Court may consider the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL                    JS-6

| Case No. | CV 12-3934-CAS (VBKx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | INTERNATIONAL ODDITIES V. SCOTT RECORD | | |

plaintiff's choice of forum, the parties' respective contacts with each forum, the contacts relating to plaintiff's claims in the chosen forum, the costs of litigation in each forum, and the ease of access to sources of proof. See Jones v. GNC Franchising, Inc., 211 F.3d 495, 498–99 (9th Cir. 2000).

While defendant's request to transfer this action to Idaho may have been more compelling if made at the outset of the action, at this late stage, plaintiff has not demonstrated that a transfer is warranted. Plaintiff's choice of forum is owed great deference, particularly where defendant requests a transfer late in litigation, after substantial time and expense have already been incurred in litigating this action here. Given that the other factors are largely neutral, the Court denies defendant's request.

### 3.      Motion for Leave to Amend

In addition to requesting leave to amend to raise an affirmative defense based on a lack of personal jurisdiction, defendant also seeks leave to amend his answer to assert denials or admissions to paragraphs 38 through 81 of plaintiff's complaint, which defendant neglected to respond to in any form in his original answer. See Dkt. No. 17. He also seeks to clarify his denials with respect to many other paragraphs of the complaint, as well as to admit to certain allegations that he previously denied.

Given that plaintiff has now offered evidence in support of its factual contentions as part of its motion for summary judgment, many of defendant's denials, at this late stage, are not prejudicial to plaintiff. Moreover, defendant's new denials in his proposed amended answer seek to circumvent his failure to respond to plaintiff's first two requests for admissions, as discussed below, which renders many of defendant's new denials futile. Allowing defendant to assert denials now would be prejudicial to plaintiff, who has relied on these admissions in preparing its case and moving for summary judgment.

However, in the interests of adjudicating this case on the merits, the Court will allow the amended answer to be filed. Of course, defendant's denials in his answer to the allegations supporting plaintiff's claims for relief does not relieve defendant of his burden to bring forth evidence in support of these denials, where plaintiff offers undisputed evidence that allows it to prove its claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**                    JS-6

| Case No. | CV 12-3934-CAS (VBKx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | INTERNATIONAL ODDITIES V. SCOTT RECORD | | |

**B.      Plaintiff's Request for Admission**

    In addition, plaintiff contends that defendant has admitted many of the facts
potentially at issue by failing to respond to plaintiff's requests for admissions.  Under
Federal Rule of Civil Procedure 36(a)(3), "[a] matter is admitted unless, within 30 days
after being served, the party to whom the request is directed serves on the requesting
party a written answer or objection addressed to the matter and signed by the party or its
attorney."  Matters that are admitted are deemed "conclusively established" for purposes
of the litigation, unless "the court, on motion, permits the admission to be withdrawn or
amended."  Id.  Withdrawal or amendment is permissible where "it would promote the
presentation of the merits of the action and if the court is not persuaded that it would
prejudice the requesting party in maintaining or defending the action on the merits."  Id.

    It appears that defendant did respond to plaintiff's *third* set of requests for
admissions, which numbered in the hundreds, but that defendant did not respond to either
of the first two sets of requests.  Although defendant has not made a motion to set aside
the admissions that have resulted from his lack of responses, defendant has offered
evidence in support of his opposition to plaintiff's motion, including evidence that
contradicts some of his binding omissions.  Again, in the interests of adjudicating this
dispute on the merits, the Court will consider this evidence here.[2]

_____

    [2] Defendant's failure to produce some of this evidence to plaintiff during
discovery, however, raises yet another problem of default.  Under Federal Rule of Civil
Procedure 37(c)(1), "a party [who] fails to provide information . . . as required by Rule
26(a) or (e) . . . is not allowed to use that information . . . to supply evidence on a motion,
at a hearing, or at a trial, unless the failure was substantially justified or is harmless."
The Court may also adopt other sanctions in addition to or in lieu of the foregoing.  Id.
To the extent that this evidence is relevant to adjudicating plaintiff's motion, the Court
will consider it as discussed herein.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

### CIVIL MINUTES - GENERAL                              JS-6

| Case No. | CV 12-3934-CAS (VBKx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | INTERNATIONAL ODDITIES V. SCOTT RECORD | | |

**C.      Plaintiff's Motion for Summary Judgment.**

**1.      Trademark Infringement and Unfair Competition**

Plaintiff moves for summary judgment on its claims for trademark infringement and unfair competition under federal and California law.

As to trademark infringement, the Lanham Act prohibits the "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services [when] such use is likely to cause confusion, or to cause mistake. . . ."  15 U.S.C. § 1114.  Relatedly, 15 U.S.C. § 1125(a) prohibits the use in commerce of "any word, term, name, symbol, or device," which "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person. . . ."  An aggrieved trademark owner may bring suit to enforce its rights under both of these provisions.

To prevail on its Lanham Act claims, "plaintiff must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion."  Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1202 (9th Cir. 2012) (quotations omitted).  Because plaintiff's state law claims here mirror its federal claims, the analysis is the same for plaintiff's claims for under California law.  See Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 632 (9th Cir. 2008).

### (a)      Ownership of a Valid Trademark

"The Lanham Act grants trademark protection only to marks that are used to identify and to distinguish goods or services in commerce—which typically occurs when a mark is used in conjunction with the actual sale of goods or services."  Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1051 (9th Cir. 1999). "[O]wnership of a mark and the exclusive right to a mark belongs to the one who first uses the [m]ark on the goods placed on the market."  Chance v. Pac-Tel Teletrac, Inc., 242 F.3d 1151, 1158 (9th Cir. 2001).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**                    JS-6

| Case No. | CV 12-3934-CAS (VBKx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | INTERNATIONAL ODDITIES V. SCOTT RECORD | | |

In addition, a plaintiff's registration of the mark entitles it to "a strong presumption of validity." KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 408 F.3d 596, 604 (9th Cir. 2005) (citing 15 U.S.C. § 1115(a)). As for marks that have been continuously used for five consecutive years after registration, the presumption of validity is conclusive, subject to limited defenses. See 15 U.S.C. § 1065 (incontestability); id. § 1115(b) (defenses to infringement actions involving incontestable marks).

Here, plaintiff offers undisputed evidence that its registered "International Oddities" mark has achieved incontestable status through its use in commerce for greater than five years. The evidence is also undisputed that plaintiff's "A'hia" mark is registered and has been used by plaintiff in connection with the sale of its smoking products for over ten years. PSUF 16. Defendant also agrees that plaintiff has superior and prior rights in each of these registered marks, and that defendant's uses of these marks was done without plaintiff's authorization. PSUF 76–78; see also Def.'s Response to Decl. of Robert Hillard ¶¶ 8–15. Accordingly, because defendant has offered no evidence to rebut this prima facie showing of validity, the Court concludes that plaintiff has demonstrated ownership over valid, protectible marks.

### (b)    Likelihood of Confusion

"The 'likelihood of confusion' inquiry generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing one of the marks or names at issue in the case." Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1209 (9th Cir. 2012). To determine whether such a likelihood exists, the Ninth Circuit applies the eight-factor Sleekcraft test, set forth in AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348–49 (9th Cir.1979). The factors are: (1) the strength of the plaintiff's mark; (2) the relatedness or proximity of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the degree to which the parties' marketing channels converge; (6) the type of goods and degree of care purchasers are likely to exercise in selecting the goods; (7) evidence of the defendant's intent; and (8) the likelihood that the parties will expand their product lines. Id.

The factors "should not be rigidly weighed," Dreamwerks Prod. Grp., Inc. v. SKG Studio, 142 F.3d 1127, 1129 (9th Cir. 1998), but are instead "intended to guide the court in assessing the basic question of likelihood of confusion," E. & J. Gallo Winery v. Gallo

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**                           JS-6

| Case No. | CV 12-3934-CAS (VBKx) | Date | July 22, 2013 |
| --- | --- | --- | --- |
| Title | INTERNATIONAL ODDITIES V. SCOTT RECORD | | |

Cattle Co., 967 F.2d 1280, 1290 (9th Cir. 1992).  "A determination may rest on only those factors that are most pertinent to the particular case before the court, and other variables besides the enumerated factors should also be taken into account based on the particular circumstances."  Readen LLC, 683 F.3d at 1209.  In the context of allegedly similar internet domain names, the most important factors are the similarity of the marks, proximity of the goods, and the simultaneous use of the Internet for marketing.  Id.  The Court addresses the most pertinent factors here.

### (i)      Strength of Marks

A mark's strength is based on its conceptual strength and strength in the marketplace.  See GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1207 (9th Cir. 2000).  At the outset, the Court notes that defendant does not offer any evidence to counter plaintiff's showing that its marks are well-established in the marketplace.  There is no genuine material dispute on this issue.

Conceptual strength, in turn, depends on the mark's characterization: the strongest marks are "arbitrary" or "suggestive" marks; the weakest are "descriptive" and "generic" marks.  See Sleekcraft, 599 F.2d at 349.  Weaker marks are afforded less protection than strong ones, with generic marks afforded no protection at all.  See Matrix Motor Co. v. Toyota Jidosha, 290 F. Supp. 2d 1083, 1091 (C.D. Cal. 2003).  In addition, "in situations in which the appearance of the conflicting marks and the services provided are almost identical, the strength of the mark is of diminished importance in the likelihood of confusion analysis."  GoTo.com, 202 F.3d at 1208.

Plaintiff's evidence that its International Oddities and A'hia marks are conceptually strong is also left undisputed by defendant.  See Def.'s Response to Hillard Decl. ¶ 14.  Defendant's objections to plaintiff's evidence in this regard are unfounded. The undisputed evidence before the Court is that both of plaintiff's marks are distinctive and strong, as they bear no particular relation to the product being sold.  These are the sort of arbitrary marks entitled to the highest level of protection.

### (ii)      Similarity of the Marks

To determine the similarity of the marks, the Court must look to "sight, sound, and meaning," with the understanding that "any similarities weigh more heavily than

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

## CIVIL MINUTES - GENERAL                         JS-6

| Case No. | CV 12-3934-CAS (VBKx) | Date | July 22, 2013 |
|----------|----------------------|------|---------------|
| Title | INTERNATIONAL ODDITIES V. SCOTT RECORD | | |

differences." <u>Rearden</u>, 683 F.3d at 1211. "The greater the similarities between the two marks, the greater the likelihood of confusion." <u>GoTo.com, Inc. v. Walt Disney Co.</u>, 202 F.3d 1199, 1206 (9th Cir. 2000). Here, there is no dispute that defendant registered the domain name "ahiabuds.com," and utilized the terms "Ahia bud," "A'hia," and "International Oddities" in connection with the sale of his goods over the internet, making direct use of plaintiff's protected marks. The similarity borders on total identity.

The fact that defendant included a purported "disclaimer" that "A'hia is a trademark of International Oddities" on his website does little to detract from plaintiff's showing. The disclaimer cannot distance defendant from the fact that the website itself incorporated the "A'hia" trademark in its domain name, and that he called the website "AHIA factory" on the home page. The undisputed evidence of the mark's similarity strongly supports a likelihood of confusion.

### (iii)    Relatedness of the Parties' Goods and Marketing Channels

These factors also strongly support there being a likelihood of confusion. Defendant freely admits that he "decided to go into direction competition with [plaintiff]" in the sale of legal smoking products, as the evidence demonstrates. PSUF 28, 34. Moreover, on his website, defendant admitted that he "went into competition with [plaintiff]" to offer the "illusive 'A'hia Bud," claiming to offer "exactly the same plant." PSUF 45. When the website was operative, it is further undisputed that both parties used the internet to sell their respective products. Other relevant considerations, including the parties' "advertising [and] the existence of direct competition," also strongly support a likelihood of confusion finding here. <u>Matrix</u>, 290 F. Supp. 2d at 1094.

Defendant attempts to distance himself from these admissions by arguing that his products were not intended for "consumption," unlike plaintiff's, but he fails to raise genuine factual disputes in this regard. It is undisputed that defendant did not include a disclaimer with respect to consumption in his print advertisement that appeared directly adjacent to plaintiff's, and that he wanted to sell the same plant as International Oddities, because he "thought this might be a good business." Decl. of Scott Record at 2. Even taking this evidence in a light most favorable to defendant, there is no dispute that defendant intended his goods to be identical to plaintiff's—he admits that was the point of his enterprise. This factor supports awarding judgment in plaintiff's favor on this claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

### CIVIL MINUTES - GENERAL                                JS-6

| Case No. | CV 12-3934-CAS (VBKx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | INTERNATIONAL ODDITIES V. SCOTT RECORD | | |

#### (iv)    Alleged Infringer's Intent

"This factor favors the plaintiff where the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark." Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1059 (9th Cir. 1999).  Here, defendant has admitted his knowledge of plaintiff's ownership of the International Oddities and A'hia marks at the time he adopted these marks for use on his website, and has admitted his intent to go into "direct competition" with plaintiff by using the "A'hia" name.  Whether or not defendant intended to infringe plaintiff's marks in the legal sense is irrelevant, as defendant's undisputed intent to use plaintiff's marks is circumstantial evidence of a likelihood of confusion.

#### (v)    Conclusion

Based on the foregoing, the Court finds that there remains no genuine issue of material fact that consumers are likely to be deceived by defendant's use of the "A'hia" and "International Oddities" marks.  Indeed, the facts are largely undisputed, even without taking into account defendant's admissions.  At a minimum, defendant's adoption of the ahiabuds.com website and use of the A'hia name is highly likely to confuse consumers, and no reasonable jury could find to the contrary.  Judgment for plaintiff is appropriate as to defendant's liability on these claims for trademark infringement and unfair competition.

### 2.    ACPA Claim

Under the ACPA, a trademark owner may bring suit against a person who (1) registers or traffics in a domain name that is (2) "identical or confusingly similar" to a distinctive mark with (3) "a bad faith intent to profit from that mark."  15 U.S.C. § 1125(d)(1)(A); see Rearden, 683 F.3d at 1219.

There is no dispute of material fact as to the first element of plaintiff's ACPA claim here—defendant has adopted multiple domain names that are "identical or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    ○

**CIVIL MINUTES - GENERAL**                        **JS-6**

| Case No. | CV 12-3934-CAS (VBKx) | Date | July 22, 2013 |
|----------|----------------------|------|---------------|
| Title | INTERNATIONAL ODDITIES V. SCOTT RECORD | | |

confusingly similar" to plaintiff's protected A'hia mark.[3]  The Court's discussion with respect to trademark infringement above applies with equal force here, as these domain names are clearly highly similar and nearly identical to plaintiff's mark.  No reasonable jury could find to the contrary.

Bad faith intent is determined with reference to a number of statutorily-defined factors, including the defendant's "prior use" of the domain name; "noncommercial" nature of the website; and "the [defendant's] intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark."  Id. § 1125(d)(1)(B).  The Court must also consider "the unique circumstances of each case, which represent the most important grounds for finding bad faith," as well as whether a "safe harbor" applies for a defendant who "believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful."  Rearden, 683 F.3d at 1220 (citing 15 U.S.C. § 1125(d)(1)(B)(ii)) (quotations omitted).

Viewing the evidence in the light most favorable to defendant, defendant's lack of good faith is not subject to genuine dispute, even if the Court discounts defendant's admissions in discovery.  See Lahoti v. VeriCheck, Inc., 586 F.3d 1190, 1202 (9th Cir. 2009) (affirming grant of summary judgment on the issue of bad faith).  Defendant's use of the mark was commercial in character, and he sought to attract consumers to his website by using plaintiff's "A'hia" mark in the website's domain name.  His very purpose, as he admits in his declaration, was to compete with plaintiff.  The difficulty is that defendant did so by co-opting plaintiff's trademark for use in his new website's domain name.  Plaintiff has also offered undisputed evidence that the potential diversion of consumers to defendant's website would harm its goodwill in the marketplace.

Finally, although defendant does not argue the point, the Court concludes that no safe harbor could apply here.  As in the case here, "a defendant who acts even partially in bad faith in registering a domain name is not, as a matter of law, entitled to benefit from the ACPA's safe harbor provision."  Lahoti, 586 F.3d at 1203 (quotation omitted).  The

---

[3] Although defendant now purports to dispute whether he in fact registered the "ahiabud.com" domain name (as opposed to "ahiabuds.com"), plaintiff offers uncontroverted documentary evidence that defendant owned this website.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**                    **JS-6**

| Case No. | CV 12-3934-CAS (VBKx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | INTERNATIONAL ODDITIES V. SCOTT RECORD | | |

safe harbor is meant "to protect[] uses such as parody and comment, and use by persons ignorant of another's superior right to the mark," neither of which describes defendant's undisputed conduct here. <u>DSPT Int'l, Inc. v. Nahum</u>, 624 F.3d 1213, 1220 (9th Cir. 2010). Accordingly, the Court finds that judgment for plaintiff is appropriate.

### 3.     False Advertising Claims

The elements of a false advertising claim under the Lanham Act are:

(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

<u>Southland Sod Farms v. Stover Seed Co.</u>, 108 F.3d 1134, 1139 (9th Cir. 1997) (citing 15 U.S.C. § 1125(a)).[4]  These elements are "substantially congruent" to the elements of a claim under California law, and therefore these may be considered together.

Taking the evidence in the light most favorable to defendant, the Court finds that plaintiff is entitled to judgment on this claim. First, the evidence is undisputed that defendant falsely advertised his product as coming from "exactly the same plant" as International Oddities' A'hia product. PSUF 45, 47. Defendant now claims that an unidentified botanist "identified" the "plant sold by International Oddities" as *Waltheria americana*, but this speculative, hearsay evidence is not admissible to counter plaintiff's showing. As such, plaintiff's evidence that their A'hia product contains no *Waltheria americana* whatsoever, and is a blend of more than one plant, stands unrebutted.

---

[4] It is undisputed that the advertisements at issue entered interstate commerce. PSUF 42.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**                    JS-6

| Case No. | CV 12-3934-CAS (VBKx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | INTERNATIONAL ODDITIES V. SCOTT RECORD | | |

Second, the very nature of defendant's false statement is likely to deceive reasonable purchasers in the segment audience. Defendant offers nothing to counter plaintiff's arguments on this point. Telling consumers that a product is from "exactly the same plant" when in fact, the product is not, is by definition a statement that has the tendency to deceive.

Third, defendant does not dispute that he made the false statement in question in order to influence target consumers into believing that his goods were a viable alternative to plaintiff's goods, sold in connection with the same A'hia mark. PSUF 48. This undisputed fact establishes the materiality of this of this false statement, as this statement, along with the far lower price point, was the key selling point for defendant's "A'hia" merchandise.

Fourth, although plaintiff has not demonstrated it suffered actual damages, "an inability to show actual damages does not alone preclude a recovery" on a claim for false advertising. Southland Sod, 108 F.3d at 1146 (quotation omitted). "[T]he preferred approach allows the district court in its discretion to fashion relief, including monetary relief, based on the totality of the circumstances." Id. Along with plaintiff's other claims, the Court finds that plaintiff is entitled to "appropriate relief" for its false advertising claim.

Based on the foregoing, the Court concludes that plaintiff is entitled to judgment as a matter of law on its claims for false advertising. There is no genuine dispute of material fact that defendant advertised his goods in a materially deceptive way, by making false statements with respect to the identity of his and plaintiff's "A'hia" product.

### 4.    Remedies

Plaintiff seeks a permanent injunction against defendant, statutory damages under the ACPA in the amount of $100,000 per domain name, post-judgment discovery to ascertain its actual damages resulting from defendant's trademark infringement and unfair competition, and its attorneys' fees incurred in prosecuting this action.

First, based on the evidence in the record thus far, the Court is not convinced that plaintiff is entitled to the substantial statutory damages that it seeks under the ACPA. As best as can be discerned, defendant's website was only active for a limited amount of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    ○

**CIVIL MINUTES - GENERAL**                    **JS-6**

| Case No. | CV 12-3934-CAS (VBKx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | INTERNATIONAL ODDITIES V. SCOTT RECORD | | |

time, and defendant did not achieve even a modicum of commercial success, legitimate or otherwise. And while defendant has not participated in this action in good faith at all times, awarding plaintiff the statutory damages that it seeks would amount to a substantial windfall, based on the evidence before the Court. Accordingly, the Court finds that the appropriate amount of statutory damages for plaintiff's ACPA claims is $1,000 per violation, the statutory minimum. See 15 U.S.C. § 1117(d).

Second, plaintiff initially requested further discovery on the issue of damages. At the hearing, the thrust of plaintiff's argument in favor of an award of compensatory damages concerned the likely cost of advertising needed to correct defendant's misstatements. Thereafter, plaintiff submitted further argument and evidence as to its need for corrective advertising, including the price of advertisements in various trade publications, and defendant filed a response.

The Court determines, however, that an award of compensatory damages for corrective advertising costs is not appropriate. Significantly, plaintiff has not adduced any evidence that it suffered an injury to its brand that would require corrective advertising. In the Ninth Circuit, "[a]n award of the cost of corrective advertising, like compensatory damage awards in general, is intended to make the plaintiff whole. It does so by allowing the plaintiff to recover the cost of advertising undertaken to restore the value plaintiff's trademark has lost due to defendant's infringement." Adray v. Adry-Mart, Inc., 76 F.3d 984, 988 (9th Cir. 1995). To determine the reasonable cost of such advertising, courts have looked to the Federal Trade Commission's benchmark, which requires businesses that engage in misleading advertising to spend twenty-five percent of the amount of their advertising budget for corrective advertising. Quia Corp. v. Mattel, Inc., Case No. CV 10-1902, 2011 WL 2749576, at *5 (N.D. Cal. July 14, 2011). But in all such circumstances, an award of compensatory damages based on potential "corrective advertising" costs must be tied to "non-speculative evidence" that the goodwill associated with the plaintiff's mark has actually been diminished by the defendant's conduct. Id. (citing, inter alia, Zazu Designs v. L'Oreal S.A., 979 F.2d 499, 506 (7th Cir. 1992)); see also Binder v. Disability Grp., Inc., 772 F. Supp. 2d 1172, 1181 (C.D. Cal. 2011) (finding that compensatory damages should not be awarded for corrective advertising where plaintiff offered no definitive evidence of any diminishment in the goodwill associated with the defendant's mark).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**                    JS-6

| Case No. | CV 12-3934-CAS (VBKx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | INTERNATIONAL ODDITIES V. SCOTT RECORD | | |

Here, plaintiff has offered only speculative evidence as to the potential loss of goodwill or business reputation that it has suffered, inferring from the nature of its products, the relevant marketplace, and defendant's three-month period of advertising that its brand has suffered significant harm. From this entirely inferential showing, plaintiff extrapolates that it is "now burdened with the overwhelming task of combating the extensive damage to [its] good will." However, plaintiff's speculation as to the harm that it has suffered as a result of defendant's conduct is insufficient to support an award of compensatory damages for corrective advertising costs. As the record presently stands, defendant did not obtain even the slightest measure of commercial success, and plaintiff offers no evidence as to how its brand has been harmed. Accordingly, the Court denies plaintiff's request for the costs of corrective advertising.

The Court also concludes that permanent injunctive relief is also appropriate in this case. A separate order will issue setting forth the terms of such an injunction.

## IV.   CONCLUSION

In accordance with the foregoing, the Court GRANTS plaintiff's motion for summary judgment as to defendant's liability on plaintiff's claims for relief and the Court awards plaintiff $2,000 in statutory damages.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |